UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DIANA DANNENFELSER,

                          Plaintiff,

            -against-

FLEXI NORTH AMERICA, LLC, FLEXI-
BOGDAHN INTERNATIONAL GMBH & CO. KG,
and PETCO ANIMAL SUPPLIES STORES, INC.,

                        Defendants.
------------------------------------------------------------------x

**MEMORANDUM
AND ORDER**
22-cv-6608 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this diversity-products liability litigation are: (1) Defendant Flexi North America, LLC's ("Flexi") motion to dismiss the Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), *see* Defendant's Motion to Dismiss, ("Flexi's Motion" or "Flexi Mot."), Docket Entry ("DE") [39]; (2) Defendant Flexi-Bogdahn International GmbH & Co. KG's ("Bogdahn") motion to dismiss the Amended Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and failure to comply with Fed. R. Civ. P. 8, *see* Defendant's Motion to Dismiss ("Bogdahn's Motion" or "Bogdahn Mot."), DE [48], and (3) Plaintiff Diana Dannenfelser's ("Plaintiff" or "Dannenfelser") cross-motion for leave to amend her Amended Complaint pursuant to Fed. R. Civ. P. 15(a) and to conduct jurisdictional discovery, *see* Plaintiff's Cross-Motion to Amend in Opposition to Flexi's Motion ("Plaintiff's Motion" or "Pl. Mot."), DE [40]. Defendant Petco Animal

Supplies Stores, Inc. ("Petco," together "Defendants") joins in that portion of Bogdahn's Motion brought pursuant to Rule 12(b)(6).  *See* DE [44].

By way of Complaint dated October 31, 2022, later modified by an Amended Complaint dated May 25, 2023, Plaintiff asserts causes of action for:  (1) negligence, (2) breach of warranty, (3) failure to warn, (4) design defect, (5) manufacturing defect, and (6) punitive damages against Flexi, Bogdahn and Petco arising from injuries allegedly caused by a retractable dog leash manufactured and sold by Defendants.  *See* Complaint ("Compl.", DE [1]; Amended Complaint ("Am. Compl."), DE [29]. Dannenfelser's proposed Second Amended Complaint alleges the same claims but includes additional allegations pertaining to personal jurisdiction and her failure to warn claim.  *See* Ex. A to the Declaration of Joseph P. Donnelly in Support of Plaintiff's Motion ("Donnelly Decl."), DE [40-2] ("Proposed Second Amended Complaint" or "PSAC").

For the reasons set forth below, the Court concludes that, with respect to Flexi, personal jurisdiction is proper under NY CPLR § 302(a)(3)(i) and accordingly denies that portion of Flexi's Motion brought pursuant to rule 12(b)(2).  As to Bogdahn, its 12(b)(2) motion is denied with leave to be resubmitted, if appropriate, after the completion of limited jurisdictional discovery, and Dannenfelser's cross-motion to conduct such discovery is granted.  Defendants' Motions pursuant to Rule 12(b)(6) are granted as to Plaintiff's breach of express warranty, manufacturing defect and punitive damages claims against all Defendants, but denied as to the remaining causes of action.  Bogdahn's Motion pursuant to Rule 8 is also denied.  Lastly,

Plaintiff's Motion for leave to file a Second Amended Complaint is granted, to be filed after limited jurisdictional discovery.

## I.     BACKGROUND

### A. <u>Factual Background</u>

Unless otherwise indicated, the facts set forth herein are taken from the Proposed Second Amended Complaint, the parties' motions and the exhibits attached thereto.  Plaintiff is an individual residing in Suffolk County, New York.  PSAC at ¶ 2.  Flexi is a North Carolina limited liability company with a principal place of business in Charlotte, North Carolina.  *Id.* at ¶ 3.  Bogdahn is a German company with a principal place of business in Bargteheide, Germany.  *Id.* at ¶ 4.  Plaintiff alleges that according to Flexi's 2021 annual report filed with the North Carolina secretary of state, Flexi's sole member is Flexi-Bogdahn International Beteiligungs GmbH ("Beteiligungs"), a German company based in Bargteheide, Germany.  *See id.* at ¶ 11.  Dannenfelser asserts that Bogdahn and Beteiligungs are in fact the same entity and therefore Flexi is a subsidiary of Bogdahn.  *See id.* at 11 n. 1.  According to Bogdahn, however, Beteiligungs is a separate company entirely, and Flexi is not a subsidiary of Bogdahn.  *See* Declaration of Sven Kruse in Support of Bogdahn's Motion ("Kruse Decl."), DE [48-2], at ¶ 14.  Petco is a Delaware corporation with a principal place of business in San Diego, California.  PSAC at ¶ 6.

### 1. <u>Jurisdictional Allegations</u>

#### a. *Bogdahn*

Bogdahn designs and manufactures dog leashes in Germany.  *See* Kruse Decl. at ¶ 8.  According to Plaintiff, Bogdahn was aware that its products were marketed,

sold, purchased and used in New York via online sales and retail locations such as those owned and operated by Petco. *See* PSAC ¶¶ 19, 20. Dannenfelser alleges that Bogdahn sells and ships its products to consumers in New York through Amazon.[1] *See id.* Further, Bogdahn derives revenue from interstate and international commerce through its sale of products worldwide, including via the Internet, and at retail stores in North America. *See id.* at ¶ 20.

According to Bogdahn, it does not maintain an office in New York, is not licensed to do business in New York and does not have any employees in New York. *See* Kruse Decl. at ¶ 3. Nor does it advertise its products in New York state or direct any marketing or sales efforts towards the United States. *See id.* at ¶ 5. Bogdahn did not enter into any contracts, including a distributorship contract, with Petco or any other entity in the United States. *See id.* at ¶¶ 9-11. Further, Bogdahn asserts that it does not derive any revenue from sales of its leashes in New York state or from interstate commerce. *See id.* at ¶16.

b. *Flexi*

Flexi operates in North Carolina and sells dog leashes manufactured by Bogdahn. *See* Declaration of Koert (Kurt) Dekker in Support of Flexi's Motion ("Dekker Decl."), DE [39-2], at ¶¶ 7, 13. The leashes are ordered from Bogdahn F.O.B. Bargteheide, Germany. *See* Kruse Decl. at ¶ 12. According to Plaintiff, Flexi supplies products through the internet and retail locations to consumers in New York. *See* PSAC at ¶ 16. Specifically, Flexi maintains and operates a website that markets its

---

[1] *See* https://www.amazon.com/stores/flexiNorthAmerica/page/E4277CA1-C20A-4D71-9EBE-3A47BEFF907C?ref_=ast_bln.

products throughout North America and sells its products through Amazon.[2]  *See id.*
at ¶¶ 16-18.  Dannenfelser's attorney purchased a retractable dog leash from Flexi
via Amazon for delivery at counsel's offices in Westbury, New York.  *See* Donnelly
Decl., at ¶ 4; Ex. B to Donnelly Decl.[3]  Plaintiff further alleges that Flexi derives
revenue from the sale of its products in New York, including those sold online and
through retail locations such as those owned and operated by Petco.  *See* PSAC at ¶¶
17-18.  Dannenfelser claims that Flexi derives revenue from interstate and
international commerce through its sale of pet products throughout North America,
both via the Internet and at retail stores.  *See id.* at ¶ 18.

Flexi asserts that it does not maintain an office in New York, is not licensed to
do business in New York, and does not have any employees in New York.  *See* Dekker
Decl. at ¶ 3.  Flexi makes its leashes available for purchase in the United States,
predominantly in North Carolina.  *See id.* at ¶ 15.  According to Flexi, it did not enter
into any contracts or distributorship agreements with Petco or any other entity, or
directly ship leashes to New York.  *See id.* at ¶¶ 8-9, 11.  Petco and other retailers
place orders for leashes F.O.B. Charlotte, North Carolina and Flexi does not track
where its product is shipped or sold by the entities that purchase them.  *See id.* at ¶¶
10, 12, 14.  Flexi claims it does not sell leashes to consumers in New York state and

---

[2] *See* https://www.flexi-northamerica.com/us/.

[3] The Court notes that Exhibit B to the Donnelly Declaration – the receipt for the leash counsel
purchased – lists the seller as "Amazon.com Services LLC" and the supplier as "Other."  Ex. B to
Donnelly Decl.  Defendants' counsel purchased a similar leash on Amazon, which was sold by
"VanMark Deals" and supplied by "Other."  Declaration of Boris Brownstein in Support of Flexi's
Opposition to Plaintiff's Motion ("Brownstein Decl."), DE [41-1], at ¶¶ 6-7; Ex. B to Brownstein Decl.

does not derive substantial revenue from interstate or international commerce. *See id.* at ¶ 15.

In his sworn declaration, Flexi's Managing Director affirms that Flexi did not sell leashes through Amazon in 2020, 2021, or 2022, and did not operate an Amazon seller account. *See* Declaration of Koert (Kurt) Dekker in Opposition to Plaintiff's Motion ("Dekker Opp. Decl."), DE [41-5], at ¶ 3. Amazon – like other retailers – purchases leashes from Flexi F.O.B. Charlotte, North Carolina and subsequently makes these leashes available for sale on Amazon via a webpage that utilizes Flexi's branding and product images. *See id.* at ¶¶ 4-5. When customers purchase leashes on Amazon, Flexi has no knowledge of such orders and does not participate in fulfilling such orders. *See id.* at ¶ 7. Moreover, Flexi's website, cited by Plaintiff, includes a catalog of its products, but does not allow consumers to make purchases. *Id.* at ¶ 10. Flexi estimates that its net revenue from the purchase of its leashes by third-party sellers in New York was less than 1% of its total revenue in 2020, 2021 and 2022. *See id.* at ¶ 13.

2. Plaintiff's Injury

Bogdahn manufactures the "Flexi New Classic" retractable dog leash, which is available in two styles. PSAC at ¶ 25. The cord-style leash features a single thin rope cord that attaches to the dog's lead. *Id.* The tape-style or ribbon-style leash is wider, flatter and larger than the cord-style leash. *Id.*

On February 24, 2021, Dannenfelser purchased a medium-sized, cord-style Flexi New Classic leash (the "Leash") at a Petco store located at 401 Sunrise

Highway, Patchogue, New York 11772.  *Id.* at ¶ 27.  On April 7, 2022, Plaintiff was walking her golden retriever on Seaman Avenue in Bayport, New York.  *Id.* at ¶ 28. Subsequently, the cord of the Leash wrapped around the middle and ring fingers on Dannenfelser's left hand, which resulted in avulsion fractures and amputations to those fingers that required surgical intervention to repair.  *See id.*  Prior to this incident, the Leash had not been altered or changed from the condition in which Plaintiff purchased it.  *See id.* at ¶ 29.  At the time of her injury, Dannenfelser used the Leash in its intended or reasonably foreseeable manner.  *See id.* at ¶ 41.

According to Plaintiff, the Leash was defective and unreasonably dangerous because cord-style leashes carry an inherent risk of cutting, burning, breaking and/or amputating flesh and bone.  *Id.* at ¶ 33.  Dannenfelser also alleges that Defendants expressly warranted that the Leash was fit for the purpose for which it was intended, was safe to use in every respect, and had been designed, created, assembled and manufactured safely.  *See id.* at ¶ 42.  Defendants also impliedly warranted that the Leash was of merchantable quality and was safe for use.  *Id.* at ¶ 43.  Plaintiff relied on these warranties when she decided to purchase the Leash.  *See id.* at ¶¶ 42-43.

The    Leash    was    labeled    with    a    warning    that    stated: "Amputation/Cutting/Burning Hazard:  Never touch leash or allow it to wrap around any part of body."  *Id.* at ¶ 58.  Dannenfelser alleges that this warning is inadequate because it fails to inform users that amputation is possible when using the Leash as intended without purposefully touching the cord or wrapping it around any part of

the body.  *See id.* at ¶ 59.  According to Plaintiff, the warnings in the Leash's instruction manual are inadequate for the same reason.  *See id.* at ¶ 60.

### 3. Whether the Court May Consider the Special Precautions and Directions Booklet on the Rule 12(b)(6) Motions

Defendants submit that a "Special Precautions and Directions" booklet (the "Booklet") was included in the packaging of the Leash purchased by Plaintiff, *see* Dekker Opp. Decl. at ¶ 14; Ex. A to Dekker Opp. Decl., and argues that the Court may consider the Booklet and its contents on their 12(b)(6) motions.  *See* Flexi's Memorandum of Law in Opposition to Plaintiff's Motion and Reply in Further Support of its Motion to Dismiss, ("Flexi Reply"), DE [41], at 27 n. 18; Bogdahn's Memorandum of Law in Support of its Motion to Dismiss ("Bogdahn Memorandum" or "Bogdahn Mem."), at 17 n. 5.  The Booklet purportedly contains additional warning information regarding the Leash, which Defendants argue undermines Dannenfelser's manufacturing defect and failure to warn claims.  *See* Flexi Reply at 27-29; Bogdahn Mem. at 16-20.  On a 12(b)(6) motion, the Court may consider material outside of the complaint that is integral to the complaint or subject to judicial notice.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).  Under Federal Rule of Evidence 201, the Court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

While the Proposed Second Amended Complaint refers to "the instruction manual for the subject leash," PSAC at ¶ 60, the Court cannot, on the present record,

determine whether the Booklet and "the instruction manual" are one in the same. Although Defendants argue that the fact that the Booklet is included with every leash sold can be readily determined from Flexi's website, *see* Flexi Reply at 27 n.18, at this early stage of the litigation, the Court declines to conclude that Flexi's website is a source "whose accuracy cannot reasonably be questioned."  Accordingly, the Court does not consider the Booklet or its contents on Defendants' Rule 12(b)(6) motions.

**B. <u>Procedural History</u>**

Based on the foregoing, Plaintiff brought this action against Defendants, alleging causes of action for:  (1) negligence, (2) breach of warranty, (3) failure to warn, (4) design defect, (5) manufacturing defect, and (6) punitive damages.  *See generally* Compl.  Dannenfelser seeks compensatory damages, $50 million in punitive damages, and reasonable attorneys' fees and costs.  *Id.*  On May 24, 2023, the parties agreed via stipulation that Plaintiff would file the Amended Complaint, which sets forth the same claims and requests for relief as the Complaint.  *See* DE [27].  This Court so ordered the parties' stipulation, and the Amended Complaint was filed on May 25, 2023.  *See* DE [28]; Am. Compl.  On June 2, 2023, the parties consented to this Court's jurisdiction for all purposes.  *See* DE [32].

On June 22, 2023, the Court stayed discovery with respect to Flexi and set a briefing schedule for Flexi's motion to dismiss.  Electronic Order dated June 22, 2023.  Flexi's Motion was filed on August 22, 2023.  *See* Flexi Mot.  In opposition to Flexi's Motion, Dannenfelser cross-moved for leave to submit a Second Amended Complaint and requested permission to conduct limited jurisdictional discovery.  *See* Pl. Mot.

Thereafter, on September 22, 2023, the Court stayed discovery with respect to Bogdahn and set a briefing schedule on its motion to dismiss. Electronic Order dated Sep. 22, 2023. Petco also sought a stay of discovery, indicating it intended to join in Bogdahn's motion pursuant to Rule 12(b)(6), which the Court granted on October 6, 2023. *See* DE [44]; Electronic Order dated Oct. 6, 2023. Bogdahn's Motion was filed on October 31, 2023, which Plaintiff opposes. Bogdahn Mot.; Plaintiff's Memorandum of Law in Opposition to Bogdahn's Motion ("Opp. to Bogdahn Mot."), DE [49].

For the reasons set forth below, the Court concludes that, with respect to Flexi, personal jurisdiction is proper under NY CPLR § 302(a)(3)(i) and accordingly denies that portion of Flexi's Motion brought pursuant to rule 12(b)(2). As to Bogdahn, its 12(b)(2) motion is denied with leave to be resubmitted, if appropriate, after the completion of limited jurisdictional discovery, and Dannenfelser's cross-motion to conduct such discovery is granted. Defendants' Motions pursuant to Rule 12(b)(6) are granted as to Plaintiff's breach of express warranty, manufacturing defect and punitive damages claims against all Defendants, but denied as to the remaining causes of action. Bogdahn's Motion pursuant to Rule 8 is also denied. Finally, Plaintiff's Motion for leave to file a Second Amended Complaint is granted.

## II.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) "permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery." *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 562 (E.D.N.Y. 2011). In considering a motion to dismiss for lack

of personal jurisdiction, a court may rely on materials beyond the pleadings. *Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201, 225 (S.D.N.Y. 2013) (when considering a 12(b)(2) motion, "the Court may also rely on submitted affidavits and other supporting materials . . . in relation to the motion"). "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); *see T.A. v. Leff*, No. 17-cv-4291, 2018 WL 5077163, at *4 (E.D.N.Y. Jul. 19, 2018), *report and recommendation adopted sub nom. Lally v. Leff*, 2018 WL 4445152 (E.D.N.Y. Sept. 18, 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).

There are two types of personal jurisdiction:  general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27, 134 S. Ct. 746, 754 (2014). Specific jurisdiction "is available when the cause of action sued upon arises out of the defendant's activities in a state," while general jurisdiction, "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Austin Envtl. Corp. v. Margarita Express, LLC*, No. 21-cv-4385, 2022 WL 1443356, at *7 (S.D.N.Y. May 6, 2022) (internal citations omitted).

In diversity cases, the Court looks to the jurisdiction of the state in which it sits—here, New York. *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2010); *see Bissonette v. Podlaski*, 138 F. Supp. 3d 616 (S.D.N.Y. 2015) (applying New York law in diversity context); *McGlone v. Thermotex, Inc.*, 740 F. Supp. 2d 381, 383 (E.D.N.Y.

11

2010) (same).  To determine personal jurisdiction over a non-domiciliary, whether based on general or specific personal jurisdiction, New York courts engage in a two-part inquiry.  *See Chloé v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243-44 (2d Cir. 2007)).  Initially, the Court determines "whether Defendants' acts bring them within the reach of [New York's] long-arm statute . . . ."  *EnviroCare Techs., LLC v. Simanovsky*, No. 11-cv-3458, 2012 WL 2001443, at *2 (E.D.N.Y. June 4, 2012) (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)).  The Court then considers whether the exercise of personal jurisdiction is consistent with the due process guarantees of the U.S. Constitution.  *Id.*

## B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Nevertheless, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).  "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action," however, that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

**C. Fed. R. Civ. P. 8**

Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff "must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)). "Dismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

### D. **Fed. R. Civ. P. 15(a)**

Pursuant to Fed. R. Civ. P. 15(a), courts have discretion to allow parties to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("Under Fed. R. Civ. P. Rule 15(a), leave to amend shall be freely given when justice so requires."); *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("A court should freely give leave when justice so requires, and such leave is in the court's discretion.") (internal quotation omitted). Leave to amend should only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party." *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

### III.   DISCUSSION

Flexi and Bogdahn move to dismiss Dannenfelser's claims for lack of personal jurisdiction under New York's long-arm statute and the United States Constitution. *See* Flexi's Memorandum of Law in Support of its Motion to Dismiss ("Flexi Memorandum" or "Flexi Mem."), DE [39-1]. at 6-12; Bogdahn Mem. at 6-13. Flexi further argues that Plaintiff's breach of warranty, failure to warn and punitive damages claims fail as a matter of law under Rule 12(b)(6). *See* Flexi Mem. at 13-15. Bogdahn – joined by Petco – argues that Dannenfelser fails to state a claim as to any of the causes of action asserted against them. *See* Bogdahn Mem. at 14-24. In addition, Bogdahn argues that the Amended Complaint should be dismissed for failure to comply with Rule 8(a). *Id.* at 24. Plaintiff cross-moves for leave to conduct jurisdictional discovery and to file a Second Amended Complaint asserting personal

jurisdiction over Flexi pursuant to NY CPLR § 302(a)(1) and including additional allegations regarding Defendants' use of Amazon and her failure to warn claim. Plaintiff's Memorandum of Law in Opposition to Flexi's Motion and in Support of Plaintiff's Motion ("Opp. to Flexi Mot."), at 4-7.

For the reasons set forth below, Plaintiff's Motion to conduct jurisdictional discovery is granted and Bogdahn's Motion for lack of personal jurisdiction under Rule 12(b)(2) is denied with leave to be resubmitted if appropriate after the completion of such discovery.  Flexi's Motion for lack of personal jurisdiction is denied because jurisdiction is proper under § 302(a)(3)(ii) and comports with due process. Defendants' Motions to dismiss for failure to state a claim are granted in part and denied in part, and Dannenfelser's breach of express warranty, manufacturing defect and punitive damages claims against all Defendants are dismissed.  Bogdahn's Motion to dismiss for failure to comply with Rule 8 is denied.  Lastly, Plaintiff's Motion for leave to file a Second Amended Complaint is granted.

## A. **Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and Plaintiff's Cross-Motion for Jurisdictional Discovery**

The Amended Complaint purports to assert specific personal jurisdiction over Flexi and Bogdahn under NY CPLR § 302(a)(3).[4]  *See* Am. Compl. at ¶¶ 16-19.  Both

---

[4] Dannenfelser does not assert general personal jurisdiction over Flexi or Bogdahn.  For the sake of completeness, the Court notes that New York exercises general personal jurisdiction pursuant to NY CPLR § 301, which provides that New York has general jurisdiction over an entity that "has engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence [in New York] is warranted."  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotation marks omitted).  Here, there are no allegations to suggest that Defendants – which are a German company and a North Carolina corporation – have engaged in a continuous or systematic course of conduct in New York. *See id.*  Accordingly, the Court does not consider general personal jurisdiction over Flexi or Bogdahn.

Defendants argue that personal jurisdiction is improper under the statute and that the exercise of jurisdiction does not comport with due process. *See* Flexi Mem. at 6-12; Bogdahn Mem. at 6-13. Via the Proposed Second Amended Complaint, Dannenfelser alleges that jurisdiction over Flexi is proper under NY CPLR § 302(a)(1), SAC at ¶ 17, which Flexi contests. *See* Flexi Reply at 20-26. Plaintiff cross-moves for permission to conduct jurisdictional discovery. Opp. to Flexi Mot. at 7.

For the reasons set forth below, the Court determines that personal jurisdiction is proper over Flexi pursuant to NY CPLR § 302(a)(3)(i) and comports with due process. As such, Flexi's Motion under Rule 12(b)(2) is denied. With respect to Bogdahn, the Court concludes that personal jurisdiction is lacking on the present record but that limited jurisdictional discovery is warranted. Accordingly, Plaintiff's Motion for jurisdictional discovery is granted, and Bogdahn's Motion pursuant to Rule 12(b)(2) is denied with leave to be resubmitted after the completion of such discovery.

1. Flexi's Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff asserts that personal jurisdiction is proper over Flexi under NY CPLR § 302(a)(3) and § 302(a)(1). *See* Am. Compl. at ¶¶ 16-18; PSAC at ¶¶ 16-20. The Court considers each section in turn.

a. *NY CPLR § 302(a)(3)*

Under § 302(a)(3), a court may exercise jurisdiction over a non-domiciliary who committed a tortious act outside New York that caused injury within the state if the defendant:

16

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumers or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

NY CPLR § 302(a)(3).

Dannenfelser alleges that Flexi – which operates in North Carolina – was "negligent in the design and/or manufacture of the leash" and that such negligence caused the injuries to her fingers while operating the Leash in New York.  PSAC ¶¶ 36-38; Dekker Decl. at ¶ 13.  As such, Plaintiff has adequately alleged that Flexi committed a tortious act outside of New York that caused injury within the state. The Court next turns to whether either of the remaining requirements of § 302(a)(3) have been satisfied.

To invoke § 302(a)(3)(i), a plaintiff must demonstrate "one of four forms of ongoing New York activity by the defendant: regularly doing business in New York, regularly soliciting business in New York, engaging in a persistent course of conduct in New York, or deriving substantial revenue from goods used or consumed or services rendered in New York."  *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 338 (E.D.N.Y. 2013).  Where a defendant's use of a website is alleged to form the basis for personal jurisdiction, "courts apply a 'sliding scale' test based on the level on a website's interactivity."  *EnviroCare Techs., LLC*, 2012 WL 2001443, at *3.  "[I]f a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York

17

and is therefore subject to the court's jurisdiction." *Id.* (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) and *Mattel, Inc. v. Adventure Apparel*, No. 00-cv-4085, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001)).

With respect to the use of Amazon and other online retailers, courts focus on "the extent to which the website is used as a means for establishing regular business with the remote forum." *EnviroCare Techs.*, 2012 WL 2001443, at *3 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)). The regular sale of goods "via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though defendants do not control their Amazon.com 'storefront' or its interactivity" to the same extent as their own website. *Brady v. Anker Innovations Ltd.*, No. 18-CV-11396, 2020 WL 158760, at *5 (S.D.N.Y. Jan. 13, 2020). Where a defendant uses Amazon and other online retailers to expand their market "literally to the world," such activity constitutes transacting business in New York under § 302(a). *EnviroCare Techs.*, 2012 WL 2001443, at *4.

Here, Flexi asserts that its leashes are purchased by Petco and other retailers in North Carolina and subsequently distributed throughout the United States. *See* Dekker Decl. at ¶ 10. Flexi does not maintain an office or any employees in New York, nor does Flexi engage in any advertising efforts in the state. *Id.* at 3. Moreover, Flexi derived less than 1% of its revenue from sales traceable to New York customers. *See* Dekker Opp. Decl. at ¶ 13. And although Flexi's website can be accessed throughout North America, it merely advertises Flexi's products and does not allow customers to make purchases. *See id.* at ¶ 10. As a result, Flexi's website is not

18

sufficiently interactive so as to subject it to New York's long-arm jurisdiction under § 302(a)(3)(i).  *See DH Servs., LLC v. Positive Impact, Inc.,* No. 12-cv-6153, 2014 WL 496875, at *12 (S.D.N.Y. Feb. 5, 2014) (concluding jurisdiction was not proper where website was not interactive and defendant derived less than 2% of its revenue from New York).

Flexi's sales via Amazon, however, constitute transacting business in New York for the purposes of § 302(a)(3)(i).  Defendant's products are regularly available for purchase on Amazon nationwide, including in New York state.  *See* Dekker Opp. Decl. at ¶¶ 4-5.  Plaintiff's attorney in fact purchased a Flexi leash for delivery at counsel's office in New York.  *See* Donnelly Decl., at ¶ 4; Ex. B to Donnelly Decl. Flexi's argument that it should not be subject to personal jurisdiction because it does not personally fulfill orders placed on Amazon is of no moment.  *See* Flexi Reply at 12-14.  Courts have found that the use of Amazon and other online retailers to extend market reach throughout the country constitutes transacting business in New York, regardless of how the sales are ultimately fulfilled.  *See e.g., Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, LLC, No. 15-cv-8459, 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) (finding jurisdiction where orders were shipped and fulfilled by Amazon, rather than the defendant); *EnviroCare Techs.*, 2012 WL 2001443, at *4 (same).  Flexi cannot "avail [itself] of the benefits of the internet-created world market . . . without accepting the concomitant legal responsibilities that such an expanded market may bring with it." *EnviroCare Techs.*, 2012 WL 2001443, at *4 (quoting *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006)).  Accordingly,

Plaintiff has met its burden of demonstrating that Flexi is subject to personal jurisdiction under NY CPLR § 302(a)(3)(i).  Having so concluded, the Court need not evaluate whether Flexi is subject to personal jurisdiction under § 302(a)(3)(ii).

### b. NY CPLR 302(a)(1)

Via her motion for leave to amend, Plaintiff argues that jurisdiction over Flexi is also proper under NY CPLR § 302(a)(1).  *See* Opp. to Flexi Mot. at  13-14; PSAC ¶ 16.  Notwithstanding its conclusion regarding § 302(a)(3)(i), the Court considers whether personal jurisdiction is proper on this alternative basis.

Under § 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . (1) transacts any business within the state or contracts anywhere to supply goods and services in the state" if the cause of action stems from such commercial activity.  N.Y. C.P.L.R. § 302(a)(1).  Thus, "[t]o establish personal jurisdiction under section 302(a)(1), two requirements must be met:  (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100, 103 (2d Cir. 2006)).

"A party need not be physically present in the state for the court to obtain personal jurisdiction." *EnviroCare Techs.*, 2012 WL 2001443, at *2 (citing *Chloé*, 616 F.3d at 169).  Rather, "New York courts define transacting business as purposeful activity – some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws." *Best Van Lines, Inc.*, 490 F.3d at 246 (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37–38 (1967)) (internal quotation marks omitted).  Section 302(a)(1) "is a 'single act statute,' i.e., 'proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Chloé*, 616 F.3d at 170 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198-99 (1988) (collecting cases)).

As for the second prong of the long-arm analysis, "[t]he 'arising out of' element requires a 'substantial nexus' between the business transaction and the claim." *Energy Brands Inc.*, 571 F. Supp. at  466 (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996)); *see E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, No. 18-cv-3217, 2018 WL 6528496, at *4 (S.D.N.Y. Dec. 12, 2018) ("The Second Circuit has held that this second condition requires a showing that the contacts with the state had a 'substantial relationship' to the cause of action.") (quoting *Solé Resort, LLC*, 450 F.3d at 103).  "A transaction gives rise to a cause of action if it is substantially related to one or more elements of the claim."  *Snegur v. Grupo Iberostar*, No. 14-CV-4445, 2016 WL 74414, at *3 (E.D.N.Y. Jan. 6, 2016).

Applying the above standards, the Court cannot exercise personal jurisdiction over Flexi pursuant to § 302(a)(1).  Plaintiff alleges that Flexi transacts business in New York "by supplying pet products . . . through the internet and through retail locations in New York."  PSAC ¶ 16.  Although Flexi's alleged use of Amazon to sell

its products nationwide constitutes transacting business in New York, Dannenfelser's claims do not arise out of that business.  Plaintiff purchased the Leash at Petco, not on Amazon or through the internet.  *See id.* at ¶ 27.  As such, there is no "substantial nexus" between Flexi's purported online sales activity and Dannenfelser's claims.  *Energy Brands Inc.*, 571 F. Supp. at 466; *see Exec. Park Partners LLC v. Benicci Inc.*, No. 22-CV-02560, 2023 WL 3739093, at *7 (S.D.N.Y. May 31, 2023) (finding no personal jurisdiction under 302(a)(1) where claims did not arise out the defendant's of use of Amazon).  Moreover, Flexi's sales of leashes to Petco occurred in North Carolina – not New York.  *See* Dekker Decl. at ¶ 10.  Accordingly, on the present record, Plaintiff has not established personal jurisdiction over Flexi under NY CPLR § 302(a)(1).

### c.  Due Process Considerations

Having concluded that personal jurisdiction over Flexi is proper under New York's long-arm statute, specifically NY CPLR § 302(a)(3)(i), the Court next holds that the exercise of such jurisdiction comports with the principles of due process.  "There are two components to the due process analysis undertaken to determine whether [a defendant] is subject to the court's jurisdiction for commercial activity involving the State of New York: (1) the minimum contacts inquiry and (2) the reasonableness inquiry."  *Chloé*, 616 F.3d at 171 (citing *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37–38 (2d Cir. 2001)).  "To establish that Defendants have the requisite minimum contacts with the forum, Plaintiff must show that Defendants purposefully availed themselves of the privilege

22

of doing business in New York." *EnviroCare Techs., LLC*, 2012 WL 2001443, at *4 (citing *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997)); *see Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S. Ct. 2174, 2184 (1985) (jurisdiction is proper where defendant "manifestly has availed himself of the privilege of conducting business" in the forum state).

With respect to reasonableness, the "inquiry 'hinges on whether the assertion of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *E. Mishan & Sons, Inc.*, 2018 WL 6528496, at *6 (quoting *Chatwal Hotels & Resorts LLC v. Bollywood Co.*, 90 F. Supp. 3d 97, 107) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). To that end, courts consider five factors:

> (1) the burden on the defendant, (2) the interests of the forum State . . . (3) the plaintiff's interest in obtaining relief . . . (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies . . . and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Chloé*, 616 F.3d at 173 (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1033 (1987)).

Here, Flexi's use of Amazon to market and sell its products nationwide, including in New York, satisfies the minimum contacts test. *See EnviroCare Techs., LLC*, 2012 WL 2001443, at *4 (concluding use of Amazon nationwide satisfied the minimum contacts inquiry). Moreover, "[a]lthough a plaintiff's showing of 'minimum contacts' will generally satisfy due process, the defendant can present 'a compelling case that the presence of some other considerations would render jurisdiction

23

unreasonable.'" *E. Mishan & Sons, Inc.*, 2018 WL 6528496, at *6 (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).  Flexi has failed to assert any such considerations, apart from its argument that it does not fulfill orders placed through Amazon, which the Court noted above is unavailing.  *See* Sec. III.A.1.a, *supra*.

With respect to the reasonableness inquiry, Flexi does not offer any specific burden it would face in defending this action in New York, nor is the Court able to identify any.  In this regard, generalized complaints of inconvenience are insufficient to render jurisdiction unreasonable.  *See EnviroCare Techs., LLC*, 2012 WL 2001443, at *5.  The second factor also favors Dannenfelser because New York "has a manifest interest in providing effective means of redress for its residents." *Chloé*, 616 F.3d at 173 (quoting *Burger King Corp.*, 471 U.S. at 483, 105 S. Ct. at 2188).  Given that Plaintiff is based in New York, and presumably her witnesses and documents are here, the third factor is also satisfied.  *See EnviroCare Techs., LLC*, 2012 WL 2001443, at * 5 ("The third factor also favors Plaintiff, as Plaintiff chose New York as a forum, Plaintiff is located in New York, and presumably its witnesses and evidence are located in New York.").  The fourth factor favors Dannenfelser as well because Flexi has not proposed an alternate forum that could more efficiently resolve the present controversy.  Finally, the fifth factor appears to be neutral, and neither Plaintiff nor Flexi has proffered an argument on this point.  Accordingly, exercising personal jurisdiction over Flexi comports with traditional notions of fair play and substantial justice.

2. <u>Bogdahn's Motion to Dismiss for Lack of Personal Jurisdiction</u>

Plaintiff also asserts that personal jurisdiction over Bogdahn is proper pursuant to NY CPLR § 302(a)(3)(i) and (ii). *See* PSAC at ¶¶ 19-20. As noted above, Dannenfelser alleges that Defendants were "negligent in the design and/or manufacture of the leash" and that such negligence caused the injuries to her fingers while operating the Leash in New York. PSAC ¶¶ 36-38. Bogdahn manufactures its leashes in Germany. *See* Kruse Decl. at ¶ 8. As such, Plaintiff has adequately alleged that Bogdahn committed a tortious act outside of New York that caused injury within the state. Based on the Proposed Second Amended Complaint and the present record, however, Plaintiff has not established that the remaining requirements of § 302(a)(3)(i) or (ii) have been satisfied. Nonetheless, because the Court cannot determine whether an exercise of personal jurisdictional is appropriate on the record as presently constituted, Dannenfelser is granted limited jurisdictional discovery.

### a. Did Bogdahn regularly do business in New York under 302(a)(3)(i)?

As noted above, to establish jurisdiction under § 302(a)(3)(i), Plaintiff must allege that Bogdahn "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumers or services rendered" in New York. NY CPLR § 302(a)(3)(i). Bogdan manufactures its products in Germany and does not maintain an office in New York or have employees in New York. *See* Kruse Decl. at ¶¶ 3, 8. It does not advertise its products in New York or direct any marketing or sale efforts towards the United States. *See id.* at ¶ 5. Bogdahn ships its products to Flexi for sale in the United

States F.O.B. Bargteheide, Germany. *Id.* at ¶ 12. Plaintiff asserts that Bogdahn utilizes the same website as Flexi to advertise its products in the United States. *See* PSAC at ¶ 19. As noted above, however, this website is passive in nature and does not permit customers to purchase products, and therefore cannot provide a basis for personal jurisdiction. *See* Sec. III.A.1.a, *supra* (citing *DH Servs.*, 2014 WL 496875, at *12). Moreover, although Dannenfelser alleges that Bogdahn utilizes Amazon to sell its products throughout the United States, *see* PSAC at ¶ 20, the present record indicates that Flexi – not Bogdahn – sells merchandise to Amazon for sale on the website. *See* Dekker Opp. Decl. at ¶¶ 4-5. As such, Plaintiff has not established that Bogdahn regularly transacts business in New York for the purposes of § 302(a)(3)(i).

### b. Should Bogdahn have expected consequences in New York under 302(a)(3)(ii)?

Under § 302(a)(3)(ii), jurisdiction is proper where the defendant expects or reasonably should expect their actions to have consequences in New York and it derives substantial revenue from interstate or international commerce. NY CPLR § 302(a)(3)(ii). In products liability litigation, the likelihood or foreseeability that a defendant's product could find its way into the New York market is insufficient to satisfy 302(a)(3)(ii). *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999); *see Zanotti v. Invention Submission Corp.*, 18-cv-5893, 2020 WL 2857304, *15 (S.D.N.Y. Jun. 2, 2020) (noting "mere foreseeability" of an in-state consequence is not sufficient to establish jurisdiction). Foreseeability must be "coupled with evidence" of a purposeful affiliation with New York such as a discernible effort, whether direct or indirect, to serve the New York market such that a defendant may reasonably

anticipate being brought to court here. *Zanotti*, 2020 WL 2857304, at *15. Jurisdiction may be proper over an out-of-state manufacturer or supplier where the defendant had a distributorship contract or other agreement with a third party to sell goods in the forum state. *See Schriver v. Tap Enterprises, Inc.,* No. 3:00-CV-272, 2001 WL 34088806, at *3 (N.D.N.Y. Mar. 2, 2001).

Here, there are no allegations that Bogdahn purposefully directed its efforts towards the New York market such that it should expect to be subject to suit here. Bogdahn sells its products to Flexi in Germany for transport to North Carolina, *see* Kruse Decl. at ¶¶ 9-12, and Plaintiff makes no allegations concerning any contracts or agreements to distribute Bogdahn's products throughout the United States or in New York specifically. *See Merck Eprova AG v. Gnosis S.p.A.*, No. 07-cv-5898, 2008 WL 5336587, at *5 (S.D.N.Y. Dec. 12, 2008) (noting distribution agreement may be basis for jurisdiction); *Schriver,* 2001 WL 34088806, at *3 (same). The fact that Petco or other retailers distributed Bogdahn's products to New York consumers is insufficient to establish jurisdiction absent indicia that Bogdahn was aware that its products would reach New York. *See Lombardi v. Staples, Inc., No. 15-CV-6158,* 2016 WL 11509961, at *4 (E.D.N.Y. Dec. 15, 2016) (finding no jurisdiction where defendant manufacturer sold products in Taiwan and China that resold them in the United States). Moreover, Dannenfelser has failed to point to any efforts by Bogdahn to specifically target New York such that litigation would be foreseeable here. *See Schaadt v. T.W. Kutter, Inc.,* 169 A.D.2d 969, 970, 564 N.Y.S.2d 865, 866 (1991) (finding no jurisdiction where Germany manufacturer exclusively sold products to

Massachusetts company that subsequently distributed them throughout the United States).  Accordingly, Plaintiff has not established that Bogdahn is subject to personal jurisdiction under § 302(a)(3)(ii).

This does not end the inquiry however.  Dannenfelser purports to incorporate its arguments regarding personal jurisdiction over Flexi against Bogdahn on the basis that Flexi is a subsidiary of Bogdahn.  *See* Opp. to Bogdahn Mot. at 3.  "For New York courts to acquire personal jurisdiction over the parent based on a subsidiary's presence in New York, the parents 'control over the subsidiary's activities must be so complete that the subsidiary is, in fact, merely a department of the parent.'"  *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 142 (E.D.N.Y. 2009) (quoting *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d 426, 432, 328 N.Y.S.2d 653, 657 (1972)).  Apart from a single allegation that Flexi is Bogdahn's subsidiary, *see* PSAC at ¶ 11 n. 1, Plaintiff has not pled any facts regarding Bogdahn's degree of control over Flexi.  As a result, on the present record, the Court declines to assert jurisdiction over Bogdahn based on its alleged status as Flexi's parent company.  Nevertheless, Bogdahn's Motion pursuant to rule 12(b)(2) is denied with leave to be resubmitted if appropriate upon the competition of jurisdictional discovery as addressed below.

### 3. <u>Plaintiff's Cross-Motion for Jurisdictional Discovery</u>

Plaintiff moves for leave to conduct jurisdictional discovery in the event Defendants' Motions pursuant to 12(b)(2) are granted.  *See* Opp. to Flexi Mot. at 7. Where a plaintiff has established a genuine issue of jurisdictional fact, the Court may

in its discretion order jurisdictional discovery.  *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).  Moreover, "the district court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 446 (2d Cir. 2019) (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990) (internal alterations omitted)).

Here, the Court concludes that Dannenfelser is entitled to limited jurisdictional discovery.  For one, Plaintiff alleges that Bogdahn uses Amazon to sell its products in New York, *see* PSAC at ¶¶ 19-20, and the only facts rebutting that allegation come from the declarations of Flexi's and Bogdahn's general managers. *See* Dekker Opp. Decl. at ¶¶ 4-5; Kruse Decl. at ¶ 13.  Discovery, however, may reveal evidence to the contrary such that personal jurisdiction is proper over Bogdahn under NY CPLR § 302(a)(3).  *See EnviroCare Techs.,* 2012 WL 2001443, at *3 (quoting *Boschetto*, 539 F.3d at 1019).  With respect to Flexi, Dannenfelser also may uncover further facts regarding Flexi's sale of products to Petco such that personal jurisdiction is proper under NY CPLR § 302(a)(1), in addition to (a)(3).

Further, Dannenfelser has asserted that Flexi's sole member, Beteiligungs, and Bogdahn are in fact the same entity and that a sufficient level of control exists such that personal jurisdiction over Bogdahn is appropriate.  *See* PSAC ¶ 11 n. 1; *see Linde,* 262 F.R.D. at 142 (concluding courts can acquire personal jurisdiction over parent based on subsidiary's presence in New York where the degree of control is considerable).  Although Bogdahn asserts that Flexi is not its subsidiary, *see* Kruse

Decl. at ¶ 14, discovery may uncover evidence to the contrary.  As such, Dannenfelser may obtain jurisdictional discovery regarding the relationship between Beteiligungs, Bogdahn and Flexi.  Accordingly, Plaintiff's Motion for leave to conduct jurisdictional discovery is granted.

## B. <u>Defendants' Motions to Dismiss for Failure to State a Claim</u>

Defendants next bring motions to dismiss the Amended Complaint for failure to state a claim.  Flexi seeks to dismiss Plaintiff's breach of warranty, failure to warn and punitive damages claims, *see* Flexi Mem. at 13-15, while Bogdahn and Petco seek dismissal of all causes of action in their entirety.  *See* Bogdahn Mem. at 14-24; DE [44].  In opposition, Dannenfelser seeks to amend the allegations supporting her failure to warn claim.  *See* Opp. to Flexi Mot. at 4-5.  For the reasons set forth below, Defendants' Motions are granted in part and denied in part, and Plaintiff's causes of action for breach of express warranty, manufacturing defect and punitive damages are dismissed as to all Defendants.

### 1. <u>Design Defect (Fourth Cause of Action)</u>[5]

To state a strict products liability design defect claim under New York law, "a plaintiff must allege that (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury."[6]  *Simon v.*

---

[5] The Court refers to each cause of action as it is labeled in the Proposed Second Amended Complaint.  The claims are addressed out of order to better facilitate analysis.

[6] New York law applies.  *See Winstead v. Phillocraft Inc.*, 03-cv-3813, 2005 WL 2001902, at *5 n.2 (S.D.N.Y. Aug. 19, 2005) (citing *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1031 (2d Cir. 1996) (quoting *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 922 (1993)) (Under New York law, regarding a tort, "'the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its

*Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 403 (S.D.N.Y. 2013) (quoting *Colon v. BIC USA, Inc.*, 199 F.Supp.2d 53, 83 (S.D.N.Y.2001)).  The first and second elements "are often combined and referred to as 'the risk-utility test.'"  *Rupolo v. Oshkosh Truck Corp.*, 749 F. Supp. 2d 31, 42 (E.D.N.Y. 2010).  Under this test, a plaintiff must plead that a safer, more feasible design exists, but a court may infer the existence of such a design from the sheer gravity and foreseeability of the harm caused by the product as designed.  *See Ramirez v. Chip Masters, Inc.*, No. 11-CV-5772 , 2014 WL 1248043, at *8 (E.D.N.Y. Mar. 25, 2014).  As to causation, "whether or not a defect was indeed a substantial factor is a matter for the trier of fact to decide."  *Id.*

Here, Plaintiff alleges that at the time of the incident "there existed several products with feasible alternative designs," *see* PSAC at ¶ 69, which – standing alone – is insufficient to state a design defect claim.  *See Green v. Covidien LP,* No. 18 CIV. 2939, 2019 WL 4142480, at *3 (S.D.N.Y. Aug. 30, 2019) ("Simply asserting that a feasible alternative design exists – without pleading any supporting facts – is not sufficient to plead a defective design claim).  It is possible, however, for the Court to infer a safer, more feasible design based on the severity of Dannenfelser's injuries allegedly caused by the Leash as designed, which include avulsion fractures and amputations to her fingers requiring surgery to repair.  *See* PSAC at ¶ 28; *see, e.g., Hingos v. W.L. Gore & Assoc.,* No. 316CV969, 2017 WL 3309095, at *5 (N.D.N.Y. Jan. 27, 2017) (inferred safer design where hernia mesh caused the removal of plaintiff's

---

borders.'").  Further, the Court notes that Plaintiff has not disputed Defendants' reliance on New York law.  Accordingly, the Court applies New York law to the merits of Dannenfelser's claims.  *See Henneberry v. Sumitomo Corp. of Am.*, No. 04-civ-2128, 2005 WL 991772, at *5, n. 3 (S.D.N.Y. Apr. 27, 2005) ("Where the parties so assume, the Court need not address choice of law *sua sponte*.").

uterus); *Sullivan v. Aventis, Inc.*, No. 14-CV-2939-NSR, 2015 WL 4879112, at *7 (S.D.N.Y. Aug. 13, 2015) (inferred safer design where medication allegedly caused birth defects). As for causation, Plaintiff has adequately alleged that the design defect caused the Leash to wrap around her fingers, resulting in her injuries. *See* PSAC at ¶ 28. Accordingly, Dannenfelser has sufficiently alleged a design defect claim, and Defendants' Motions are denied as to this cause of action.

## 2. Manufacturing Defect (Fifth Cause of Action)

Under New York law, to plead a strict products liability manufacturing defect claim, the plaintiff must "show that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction, and that the defect was the cause of plaintiff's injury." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (internal quotation marks omitted). Moreover, design defect and manufacturing defect claims may be pled in the alternative. *See Catalano v. BMW of N. Am.*, LLC, 167 F. Supp. 3d 540, 555 (S.D.N.Y. 2016).

Here, Plaintiff has failed to allege how the Leash she purchased was defective or what specific mishap occurred in the manufacturing process, apart from a conclusory reference to "a flaw in the manufacturing process." PSAC at ¶ 77. Accordingly, Dannenfelser's manufacturing defect claim is dismissed. *See Catalano*, 167 F. Supp. 3d at 555 (dismissing manufacturing defect claim where plaintiff failed to allege specific flaw in manufacturing process). Defendants' Motions are granted with respect to this cause of action.

### 3.  Failure to Warn (Third Cause of Action)

To plead a strict products liability claim on a failure to warn theory, a plaintiff must allege:  "(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm."  *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012) (quoting *State Farm Fire & Cas. Co. v. Nutone, Inc.,* 426 Fed. App'x 8, 10 (2d Cir. 2011)).  A failure to warn cause of action may be dismissed where the plaintiff does not plead facts indicating how the provided warnings were inadequate.  *See Reed v. Pfizer, Inc.,* 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012). "Whether warnings were necessary and reasonable is a question for the jury to decide." *Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 406 (E.D.N.Y. 1995).

Plaintiff pleads that Defendants had a duty to warn the public regarding the Leash, *see* PSAC at ¶ 62, and therefore the first element of the claim is satisfied.  Via the Proposed Second Amended Complaint, Dannenfelser alleges that the Leash contained a warning that contained the following language: "Amputation/Cutting/Burning Hazard: Never touch leash or allow it to wrap around any part of body."  PSAC at ¶ 58.  Dannenfelser asserts that this warning was inadequate because it failed to inform users that amputation was possible "without purposefully touching the cord or wrapping it around any part of the body."  *Id.* at ¶ 59.  The warnings provided in the Leash's instruction manual were purportedly deficient for the same reason.  *See id.* at ¶ 60.  As such, Plaintiff has satisfactorily identified the provided warnings and how they were inadequate, *see Reed,* 839 F.

33

Supp. 2d at 575, while the ultimate reasonableness of such warnings will be evaluated by the trier of fact. *See Assam,* 163 F.R.D. at 406. Moreover, Dannenfelser has alleged that Defendants' failure to provide adequate warnings caused the injuries to her fingers. *See* PSAC at ¶ 28. Accordingly, Plaintiff has stated a failure to warn claim and Defendants' Motions are denied with respect to this cause of action.

### 4. Negligence (First Cause of Action)

Dannenfelser alleges that Defendants were negligent in the design and manufacture of the Leash, as well as in failing to issue proper warnings. *See id.* at ¶ 35. In products liability cases, negligence claims and strict liability claims for design defect and failure to warn are analyzed identically. *See Krulewich v. Covidien, LP,* 498 F. Supp. 3d 566, 578 (S.D.N.Y. 2020). Therefore, to the extent a plaintiff alleges a design defect or failure to warn claim grounded in a negligence theory, the claims survive and fail for the same reasons as the plaintiff's strict liability claims. *See Searle v. Suburban Propane Div. of Quantum Chem. Corp.,* 263 A.D.2d 335, 338, 700 N.Y.S.2d 588, 591 (3d Dep't 2000) ("[T]here is almost no difference between a prima facie case in negligence and one in strict liability"). Accordingly, given that Plaintiff states a claim for design defect and failure to warn on a strict liability theory, her negligence claim survives as well. *See Cowan v. Costco Wholesale Corp.,* No. 15-CV-05552 (PKC), 2017 WL 59080, at *4 (E.D.N.Y. Jan. 5, 2017) (denying motion to dismiss negligence claim where plaintiff stated a claim for strict liability claims). Defendants' Motions are therefore denied with respect to Dannenfelser's negligence cause of action.

5. <u>Breach of Warranty (Second Cause of Action)</u>

As a threshold matter, Defendants argue that Plaintiff's breach of warranty claim must be dismissed for failure to notify Defendants of the alleged breach within a reasonable time. *See* Bogdahn Mem. at 23; Flexi Mem. at 13. To assert a breach of warranty cause of action under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C. § 2–607(3)(a)). There is, however, an exception to the notice requirement where the product at issue is for retail sale or intended for human consumption, particularly where the claims are grounded in personal, rather than monetary, injury. *See Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 133 (N.D.N.Y. 2022); *Richards v. Johnson & Johnson, Inc.*, No. 517CV00178, 2018 WL 6573332, at *4 (N.D.N.Y. Dec. 13, 2018) (declining to dismiss breach of warranty claim for failure to comply with notice requirement in a personal injury action); *see also Tomasino v. Estee Lauder Companies, Inc.*, No. 13-CV-4692, 2015 WL 4715017, at *4 (E.D.N.Y. Aug. 7, 2015) (noting that courts have not applied the notice requirement to claims for personal injury sounding in tort). Here, given that the leash was available for retail sale and Dannenfelser's claims arise from personal injury sounding in tort, Plaintiff's failure to provide notice within a specific period of time will not defeat her breach of warranty cause of action.

Plaintiff claims that Defendants breached an express warranty that the Leash was fit for the purpose for which it was intended as well as the implied warranty of

merchantability.  *See* SAC at ¶¶ 40-49.  The Court considers each alleged warranty in turn.

### a. *Express Warranty*

Under New York law, to state a claim for breach of express warranty, a plaintiff must allege:  "(i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020). Here, Dannenfelser does not identify a specific material statement made by any Defendant constituting a warranty, apart from the conclusory allegation that "Defendants expressly warranted that said leash was fit for the purpose for which it was intended and . . . said product was safe to use in every respect."  PSAC at ¶ 42. Although Plaintiff makes a vague reference to the Leash's instruction manual and product labeling, these allegations are insufficient.  *See Kennedy v. Covidien, LP*, No. 118-CV-01907, 2019 WL 1429979, at *6 (S.D.N.Y. Mar. 29, 2019) (dismissing breach of warranty claim where plaintiff alleged only that defendant's marketing materials implied the product was "safe and effective").  Accordingly, Dannenfelser has failed to state a claim for breach of an express warranty.  Defendants' Motions are granted with respect to this cause of action, and this claim is dismissed as to all Defendants.

### b. *Implied Warranty of Merchantability*

Under New York law, "[t]he implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they

are used and that they will pass in the trade without objection." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (quoting *Saratoga Spa & Bath, Inc. v. Beeche Systems Corp.,* 230 A.D.2d 326, 330, 656 N.Y.S.2d 787, 789 (3d Dep't 1997)).   To assert a breach of implied warranty claim based on design defect, a plaintiff must allege the following three elements: "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect was the proximate cause of the injury." *Kaemmlein v. Abbott Lab'ys*, 564 F. Supp. 3d 58, 75 (E.D.N.Y. 2021).   The New York Court of Appeals has held that "liability under strict products liability and implied warranty theor[ies] are essentially the same, except that under the implied warranty theory, it is not necessary to show the feasibility of alternative designs." *Dalton v. Stedman Mach. Co.*, No. 05-CV-452, 2008 WL 351676, at \*7 (N.D.N.Y. Feb. 7, 2008) (citing *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258-259, 639 N.Y.S.2d 730, 737-739 (1995)).   Given that Plaintiff has stated a claim for design defect and failure to warn under a strict liability theory, her cause of action for breach of the implied warranty of merchantability survives for the same reasons. *See Cowan*, 2017 WL 59080, at \*5 (denying motion to dismiss implied warranty claim where plaintiff stated a design defect claim).   Accordingly, Defendants' Motions are denied with respect to Dannenfelser's breach of implied warranty cause of action.

### 6.   Punitive Damages (Sixth Cause of Action)

Plaintiff asserts a sixth and final cause of action for "punitive damages."  *See* PSAC at ¶¶ 81-84.  Under New York law, there is no separate cause of action for

punitive damages.  *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004); *Paisley v. Coin Device Corp.*, 5 A.D.3d 748, 750, 773, N.Y.S.2d 582, 583 (2d Dep't 2004) (affirming dismissal of cause of action for punitive damages).   Accordingly, Dannenfelser's sixth claim for punitive damages should be dismissed as to all Defendants.[7]

### C.  <u>Bogdahn's Motion to Dismiss for Failure to Comply with Rule 8</u>

Bogdahn further argues that dismissal is warranted based on Plaintiff's failure to comply with Fed. R. Civ. P. 8(a).  *See* Bogdahn Mem. at 24.  Specifically, the Amended Complaint and the Proposed Second Amended Complaint reference "Defendants" generally without differentiating which defendant is responsible for the alleged conduct.  *Id.*  Dismissal pursuant to Rule 8 is appropriate when a complaint is "confused, ambiguous, vague, or otherwise unintelligible" or where it fails to explain "what conduct constituted the violations."  *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003).  Rule 8, however, does not require "plaintiffs to formally separate claims defendant by defendant."  *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004).

While it is true that Dannenfelser refers to all three Defendants collectively with respect to her six causes of action, this form of pleading does not rise to the level of a Rule 8 violation.  The Amended Complaint and Proposed Second Amended

---

[7] This conclusion should not be construed to bar Plaintiff from seeking punitive damages on her remaining causes of action.  *See Levin v. Johnson & Johnson*, No. CV 16-6631, 2019 WL 6392503, at *11 (E.D.N.Y. June 17, 2019), *report and recommendation adopted as modified*, No. 16-CV-6631, 2019 WL 3980876 (E.D.N.Y. Aug. 23, 2019) ("However, this does not mean that Plaintiff is barred from pursuing punitive damages as a form of monetary relief. It just simply may not stand as a separate cause of action.").

Complaint alert Defendants that each claim is asserted against each Defendant.  *See generally* Am. Compl.; PSAC.  The pleadings put Defendants on notice of the claims against it to sufficiently satisfy Rule 8.  *See Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-CV-7639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015) (concluding pleadings satisfied Rule 8 where 24 defendants were referred to collectively).  Accordingly, Bogdahn's Motion on Rule 8 grounds is denied.

### D. Plaintiff's Motion for Leave to Amend

Plaintiff seeks leave to file a Second Amended Complaint to assert additional allegations as to jurisdiction and her failure to warn claim.  *See* Opp. to Flexi Mot. at 4-6.  As noted above, the Court may grant such leave "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nevertheless, "a district court may deny leave to amend when . . . amendment would be futile because the problem with the claim 'is substantive . . . [and] better pleading will not cure it.'"  *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Specifically, the Proposed Second Amended Complaint includes additional allegations regarding Flexi's and Bogdahn's use of their website and Amazon to market and sell their products in New York, *see* PSAC at ¶¶ 17-20, as well as asserting an additional statutory basis for jurisdiction over Flexi, NY CPLR § 302(a)(1).  *See id.* at ¶ 16.  As discussed above, Dannenfelser's allegations regarding Amazon are sufficient to extend specific personal jurisdiction over Flexi.  *See* Sec. III.A.1.a, *supra*.  In addition, Plaintiff has been granted leave to conduct jurisdictional

discovery regarding Bogdahn, as well as whether jurisdiction is proper over Flexi under § 302(a)(1). *See* Sec. III.A.3, *supra*. Given that further discovery may provide additional support for Dannenfelser's jurisdictional allegations, the proposed amendments are not futile. Lastly, the Proposed Second Amended Complaint's additional allegations pertaining to the failure to warn claim, *see* PSAC at ¶¶ 58-60, adequately state a claim against all Defendants. *See* Sec. III.B.3, *supra*. Accordingly, Plaintiff's Motion for leave to file the Proposed Second Amended Complaint is granted in its entirety, to be filed at the conclusion of jurisdictional discovery.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that personal jurisdiction over Flexi is proper under NY CPLR § 302(a)(3)(i) and accordingly denies that portion of Flexi's Motion brought pursuant to rule 12(b)(2). As to Bogdahn, its Rule 12(b)(2) motion is denied with leave to be resubmitted, if appropriate, after the completion of limited jurisdictional discovery, and Dannenfelser's cross-motion to conduct such discovery is granted. Defendants' Motions pursuant to Rule 12(b)(6) are granted as to Plaintiff's breach of express warranty, manufacturing defect and punitive damages claims against all Defendants, but denied as to all remaining causes of action. Bogdahn's Motion pursuant to Rule 8 is also denied. Lastly, Plaintiff's Motion for leave to file a Second Amended Complaint is granted, to be filed after limited jurisdictional discovery.

A status conference is scheduled for February 28, 2024 at 11:00 a.m. in Courtroom 820 of the Central Islip courthouse, at which time the Court will set a

schedule for the jurisdictional discovery described herein, and the filing of a Second

Amended Complaint.


Dated:        Central Islip, New York
              February 15, 2024            **SO ORDERED:**

                                           /s/ Steven I. Locke
                                           STEVEN I. LOCKE
                                           United States Magistrate Judge